## UNITED STATES v. ONE PEARL NECKLACE et al.

### (District Court, S. D. New York. June 12, 1900.)

CUSTOMS DUTIES—ENTRY OF PERSONAL BAGGAGE—FORFEITURE.

Where the form of declaration for entry of the personal baggage and effects of a passenger prescribed by the treasury department, and used by the customs officers, does not call for an enumeration of the contents of packages, as provided for in Rev. St. § 2799, it must be regarded as a waiver of such enumeration, and an election to proceed by the alternative method of examination provided by section 2801; and, unless there is fraud or intentional concealment by the passenger, he cannot be subjected to the forfeiture of articles which are in fact personal baggage or effects, under section 2802, because they are not specifically described in such declaration, although they may be dutiable on account of excessive value, as the penalty of forfeiture prescribed by such section applies only to entries required under section 2799 to obtain a permit for the landing of the articles specified therein without examination.

This was an information against a pearl necklace and other jewelry, to obtain forfeiture thereof. The alleged grounds of forfeiture were: (1) That said articles were smuggled into the United States in violation of section 3082 of the Revised Statutes; (2) that they were imported without having been declared to the collector, in violation of said section 3082; (3) that they were not declared to the collector, contrary to section 2802; (4) that they were unladen and delivered without a permit, in violation of sections 2872 and 2874. The goods were claimed by Mrs. Phyllis E. Dodge, who, in her answer, traversed the causes of forfeiture, admitted her neglect to declare the articles, but denied that such neglect was illegal; alleged that she believed they were not dutiable; that they were in use by her on her journey, and were not intended for sale; that they were not concealed, but were shown to the customs officers upon inquiry. Claimant asked that certain articles be adjudged free of duty, and delivered to her, and that the balance of the jewelry be surrendered to her upon payment of the proper duties.

H. L. Burnett, U. S. Atty., and E. E. Baldwin, Asst. U. S. Atty., for the Government.

Hoadly, Lauterbach & Johnson (W. Wickham Smith and Mr. F. R. Minrath, of counsel), for claimant.

At the opening of the case, the district attorney announced that the government would introduce no evidence under the first count. He then called customs officers, whose testimony tended to show that claimant had failed to include the jewelry in question among the articles named in her declaration; that she carried the jewelry with her in a satchel; that upon landing she was approached by an officer, to whom she handed the satchel for examination, and who found the articles within it; that claimant told the officer she had taken with her from the United States everything in the satchel; that the jewels were subsequently seized, and two of her trunks detained; that the trunks were subsequently released.

Claimant's counsel then moved to dismiss the information, or that the court direct a verdict in favor of claimant.

BROWN, District Judge (orally). This subject has been discussed in a very full manner, and in all its general bearings; but it seems to me that the disposal of this motion, having reference to the facts in this case alone, does not involve the subject as a whole, and that the decision of it might be gravely misunderstood.

In my judgment the proper determination of the really material and important questions in the case depends upon the intent and the motive of the passenger; whether there has been intentional concealment or not; whether there is an intention to introduce merchandise in the guise of baggage and to evade the payment of the duties which are known or believed to be chargeable upon the jewels or other property brought in as baggage. This case as presented here, as I understand it, eliminates that side of the question. The first count in the information alleges knowledge, intentional fraud, concealment; but that question is practically withdrawn. It was stated in the opening that no evidence would be given upon that subject. The other counts in the information do not allege anything whatever on the subject of knowledge that the goods were dutiable, or any intent to conceal, or to evade the payment of duties, or even the knowledge of the passenger that they were in fact dutiable. The answer avers in several places that they were not dutiable at all, or that the passenger believed them not to be dutiable; that there was no concealment in fact and no intent to conceal anything. The counts on which the forfeiture is based are counts resting upon the naked fact that some articles, which the custom-house authorities decided to be dutiable, were not named in the baggage declaration (Exhibit 1)—upon the simple fact that they were not mentioned there specifically. That is, that on an examination of the baggage of this person, they found in a valise articles which had not been mentioned to the collector, and by "mention" is meant had not been specifically mentioned. The articles are such as I should rule might come within the class of personal effects. The answer alleges that they were not merchandise; were not designed to be bought and sold. There is no averment in either of the three last counts of the information that they were intended to be bought and sold, although they are called goods, wares and merchandise, and as such are said to have been found in the baggage. That is true. In a general sense everything that is capable of being bought and sold may be merchandise. The opening section of the title of the Revised Statutes pertaining to this subject recognizes this, and says they may be construed as merchandise. Whether they are or not specifically to be considered as merchandise depends upon the circumstances. I have no doubt that personal effects, not designed for sale, and not designed as presents, are not merchandise in the sense of the statutes relating to baggage; and those statutes are what we are considering here.

Now the question submitted is, as I understand it, whether there shall be a forfeiture from the naked fact that certain articles were not specifically mentioned in a declaration like this, because they are adjudged afterwards on examination by the customs authorities to be dutiable.

As I have said before, I should have no hesitation on that subject, provided there had been an entry, intended to be an entry as provided by the act of 1799, or as provided in sections 2799 and 2802 of the Revised Statutes, and there had been nothing else to modify that action. I consider it abundantly settled, that where a statute imposes a duty upon a citizen, for the protection of the revenue, or for any other specific purpose, to do specific acts, and establishes penalties or forfeitures as a part of the consequences of not doing the required acts, the motive of the person incurring the penalty has nothing to do with it. Therefore in this case this penalty would be incurred, and the goods would be forfeited, provided this were such an entry as was intended by the statute, and there had been nothing else to modify its effect.

These four sections of the Revised Statutes (sections 2799-2802), read by themselves, lead to hesitation and doubt as to precisely how they are to be construed and what they mean; but they are all taken from one section of the act of 1799, and if that act can be resorted to for their interpretation, or as a means of reconciling apparent opposition, there will be little difficulty. The difficulty I refer to is in the apparent inconsistency and incompatibility between 2802 and 2801 as regards the consequences of the omission of an article in the entry. Section 2801 provides for an examination of the baggage in the discretion of the collector and naval officer by an inspector or surveyor to be appointed by them, who are required to make a return to the collector; and if, on an examination by those officers, they shall find something which, in their opinion, should not be exempt from duty, that section requires that due entry shall be made and the duty paid; and that imports that such articles should not be forfeited, while section 2802 has no such exception. The latter standing alone with 2799 would require, absolutely, that they should be forfeited.

It seems to me, therefore, we are required to look at the procedure which has been adopted by the custom-house authorities to see what has been done in regard to personal baggage. If the customs authorities are acting in fact under section 2801, I think they are bound by it so far as it extends. On the other hand, if their proceedings are for an entry under 2799, and the examination made is nothing more than such an examination as might be made to test the truth of the entry, 2801 has no application. The forfeiture would become absolute under section 2802 if there was any error, even if a mistake only, and no matter how honest.

Under the Revised Statutes, as these four sections stand succeeding each other, there is a difficulty from the omission of what was said in the act of 1799, namely, that the procedure by examination was in lieu of the procedure by entry. Under the act of 1799 it is plain that the landing of baggage by permit was a landing of specific articles, and it is so stated. That is repeated in section 2801 of the Revised Statutes—the permit is for landing such articles. That does not mean a general permit to land all baggage. If we look at the regulations of the treasury to see what is intended,

the doubt is not altogether cleared up. For nearly 100 years after the Revised Statutes were passed, the regulations of the treasury, like the statutes, recognized that there were two modes of entry of passengers' baggage—one by regular entry, the other by an examination in the form provided for. That was expressly repeated in the regulations so late as 1884. I do not find it in those of 1892 or 1893. In the regulations of 1893 there seems to have been contemplated the use, to some extent, at least, of both these procedures conjoined. It is stated that no goods shall be allowed to pass— no baggage—without entry, and still further, that none shall be passed without examination. At the same time, the kind of entry that is required and the statements to be made are provided for to some extent by the forms, which it is stated in the regulations would be furnished, and one of which was used in this case and is here (Exhibit 1). Now, it is my judgment that this form of declaration was intended as a waiver, upon the part of the department, of the particular enumeration of the contents which it was provided by section 2799 and by the act of 1799 should be given. Section 2802 must be construed in connection with section 2799, to which it relates, and the forfeiture pronounced by 2802 must be referred to the failure to particularize in accordance with the particularization required by 2799.

The forfeiture of articles together with treble their value, as I said before, is a very severe punishment for a mere mistake. Much less complaint may be made of it, where the omission to mention is the result of design, through any concealment or intent to defraud the revenue. Now it seems to me the intention of 2799, like that of the act of 1799, the same words being used, was to require the passenger to enumerate, or, in the language of the act, to particularize the contents of the baggage, in that way calling the attention of the collector to the contents to enable him to say whether these particular designated articles were dutiable or not. That is the professed object of the section as it was in the law of 1799, so that on an inspection of that particular statement of contents the collector could note what was dutiable and what not. Then naturally comes the consequence that where all nondutiable articles are mentioned, and some other dutiable article has not been mentioned to the collector, the presumption of intent to cheat is so strong that the statute makes the omission conclusive and forfeits that article with triple its value. That is a fair and reasonable explanation of the severe penalty imposed by section 2802. Whether this is the reason of this severe penalty or not, there is no doubt that the forfeiture under section 2802 depends on such a nonmention of the particular article, as is required by the particularization of contents under section 2799. So that if the declaration or entry that the passenger is called upon by the customs officers to make is not of the kind contemplated by section 2799, and particularly if the passengers are in any way led by them not to make such a particularization, the entry made cannot be said to be the entry to which 2802 refers. Otherwise the effect would be that the pas-

senger would be really misled, and then advantage taken of the omission of the particularization which the statute required, but which the department waived.

Now what the department has done is, as I have said before, to establish a system for the very rapid examination of every piece of baggage that comes here; to release nothing without being examined and being marked "Passed," together with the responsibility of the officer, with a provision for the payment of duties upon such articles as are, on examination, found dutiable; upon an entry which is called "informal" in the regulations, for articles not exceeding $500 in value; other articles to go to the custom house, and to be detained for that purpose. That, it is evident, is a different thing from a mere special examination of particular baggage or of a trunk which for any reason the officers may have cause to examine. It is evidently a part of the mode of disposing of the passenger's baggage as it arrives, and I must say it seems to me to be precisely such as 2801 contemplates.

So that, when 2801 is followed, it is a procedure by which I think the government should be bound throughout; and if you take that in connection with the department's own voluntary variation of the requirements of 2799 in respect to the particular mention of specific articles, it seems to me very important, and ought to be considered as decisive upon the question whether the government was proceeding, in landing these goods and collecting duties, if they were dutiable, under section 2801, rather than through a mere entry under section 2799, with the consequent right of forfeiture of nonmentioned articles under section 2802.

Therefore my conclusion on that subject is, that in cases free from fraud or intentional concealment in a passenger's baggage of articles which belong to the class of personal effects or wearing apparel, the forfeiture should not be imposed under the method of procedure which the government is acting on, and which is shown to have been acted on in this case, for the reason that section 2801 applies and requires the allowance of the payment of duties instead of forfeiture. I should add that I regard this as having no application to articles which are not within the class of personal or wearing apparel, or implements of trade. It is strictly confined to articles which are within the general description of baggage, such as clothing or articles of personal adornment, or personal effects, whatever they may be, as usually recognized.

Under this distinction all the cases cited by both sides are inapplicable. All of them without exception have been cases in which there was endeavor to substitute merchandise in the ordinary sense of that word—goods designed for sale in the market—for personal baggage, and to bring them in free as baggage; they were evident frauds or concealment of some sort.

I shall rule, therefore, that articles belonging to the class of personal baggage, or personal effects, although they may be dutiable under the ruling of the collector by reason of their amount, are not to be forfeited under the present practice of the department, unless there

is some concealment or fraud which brings them within some other provision of the Revised Statutes than 2802.

Unless some further evidence that is competent is desired to be given on the question of fraud or intentional concealment I shall grant this motion. If the government desires to give any further evidence on that subject, or to go to the jury on these points, I will deny the motion for that purpose.

After calling one further witness, the government rested its case. Claimant's counsel then renewed his motion to dismiss the information; and the assistant district attorney moved the court to find, as matter of law, that probable cause had been shown for the prosecution for forfeiture, under three counts. After discussion, the court ruled that the circumstances were such as to furnish probable cause of intended concealment, if no explanation were supplied. Mr. Smith then opened the case for claimant, and offered testimony tending to show that the jewelry had not been purchased abroad; and also as to the value of the articles, and that there had been no concealment of same from the officers.

BROWN, District Judge (charging jury). After the very considerable discussion, gentlemen, that has been had in this case yesterday and the day before, most of which you heard, it seems to me not important to dwell upon the evidence at any great length.

I have thought it incumbent upon me, under the request of the government, to rule that there was probable cause to submit the question to you whether the introduction of this jewelry in the way stated, considering its very large amount and the very natural suspicions which would arise, had been explained to your satisfaction in such a way as to lead you to believe that the claim of Mrs. Dodge, as she has stated it to you, is substantially correct; or whether it was only another of those tricks and fraudulent schemes by which, from time to time, as we all know, persons are endeavoring to introduce goods into the country for the purpose of sale, and to deprive the United States of the proper duties upon them.

In the first part of the discussion, I was under the impression that no question was made upon the latter point, and that in withdrawing from consideration the first count in the information the government did not intend to present that question to you; being under the impression in that regard that by the subsequent facts ascertained by the government, as I assume, they were sufficiently satisfied not to do that. The waiver, however, of the district attorney did not go to that extent. On the motion made last evening, to direct, or to find, under section 21 of the administrative act, June 10, 1890 (26 Stat. 140), that there was probable cause for the course of the officers, as things appeared on arrival at the dock, that act throwing, under such circumstances, the burden of proof or of explanation upon the claimant, with some hesitation I have concluded that it was my duty to find, as that section requires the court to pass upon that subject, that there was, prima facie, probable cause at that time; that it was

a case which called for explanation, and in one aspect called loudly for explanation; and where that is the case, probable cause exists. The circumstances, as they appear in evidence thus far, disclose that a person not of any known standing, and not known to be of great wealth, had a large amount of jewelry other than this, which she was carrying, claimed by her to be old, which she had taken out and brought back again; and having in addition to that other articles, such as shown to you here, which have been seized, of very great value, and apparently out of all proportion to anything in the circumstances of the passenger, and therefore open to the very gravest suspicion. I should regard the officers of the customs as very derelict in their duty if they had not looked upon a claim of that kind at the start with very grave suspicion. If a free hand were left for the introduction of jewelry for sale in that manner, you can perceive that dealers in jewels would stand very little chance of a fair competition in trade in New York.

I therefore felt it my duty, under the provisions of the administrative act, which had not been called to the attention of the court before, to find that there was a doubt fairly presented by the case as it stood originally, without explanation (and so far as had appeared on the stand here nothing in the shape of proof had been put in on the claimant's side), that required the matter to be more fully explained to you. You have heard Mrs. Dodge's explanation; and now the substantial question, as I view it, is whether this importation was a trick and a ruse to bring in merchandise for sale, or whether the things brought here were bona fide articles of personal baggage, or personal effects, which possibly may be dutiable, because they were in excess of the amount of such kind of things which the law allows to come in free of duty, but which nevertheless were of the class of personal baggage and personal effects in truth and in reality; and whether there was any such fraud as an attempt to introduce merchandise into the market under the guise of baggage. The substance of the declaration (Exhibit 1) is that there was not. To that point, Mrs. Dodge's attention was clearly drawn in the declaration submitted to her. She was not asked for an enumeration of articles, but she is distinctly warned as to goods intended for sale. The declaration says that her baggage "contains only such wearing apparel and personal effects, and include only such articles as are of use in and necessary and appropriate for the immediate purpose of the journey and present comfort and convenience of myself and of my (blank), and are not articles intended for other persons or for sale."

Now, as I said before, I consider the substantial question for you, and which by my ruling of yesterday I required should be submitted to you, is whether that is substantially true or not. If from all the circumstances you have heard you believe this is only a trick and device to get merchandise imported for sale, then this is not personal effects or personal baggage, but is merchandise; and there are at least two counts in this information which are sufficient to warrant a confiscation and forfeiture of these goods if you find that they

are merchandise. A general baggage permit such as is in proof, authorizes the landing of baggage and articles that belong to the class of personal effects. It does not warrant the landing of merchandise—that is to say, in the sense of goods for sale. This has been repeatedly held; and although landing without a permit in such a case may be a technicality in form, it is good enough to serve the purposes of the government, if there is fraud and an intention to introduce merchandise under the guise of personal effects or baggage.

Now, on that point, perhaps I do not need to say very much, and yet as there has been no summing up in the case it is perhaps my duty to say a word to you that might otherwise be wholly unnecessary. It is necessary that juries should be cautious on this subject as well as the officers of the government, because the amount capable of being saved in duties is so great, the injury to honest merchants is so great, that there ought to be very great care not to permit any kind of tricks or devices by which merchandise can be introduced under the guise of baggage. You heard Mrs. Dodge's story. The circumstances which have been drawn from her may in one view tend to detract somewhat from the confidence you might place in her, yet on the main point, so far as respects the probabilities of the case, they may perhaps make equally strong or stronger for her. If this was a device of persons who were aiming to introduce jewelry for the purposes of sale, to make a quick turn and make ten or fifteen thousand dollars by saving duties due to the government, and getting the goods imported free in this way if they could, they would not naturally take the course which the evidence shows was taken in this case. Ordinarily the whole proceedings in such a transaction are kept secret, covered and concealed. Persons who are employed in it do not generally make a show and display of what they are getting. They do not expose such goods even to the risks of loss which such a course involves. You have heard not only the testimony of Mrs. Dodge that these presents were given to her, but there are other circumstances that go to substantiate that. The evidence that this was worn in Paris is undoubted. It is evident from the testimony that one of the weaknesses of this woman was her fondness for jewelry; the fondness for its display is shown in her testimony. For it apparently she was willing to sacrifice everything. Was she dealing in jewelry as a dealer, or was it her fondness for jewelry and display which explains her transactions? I will not say any more upon that point. There is no serious attack upon that.

I ruled yesterday that in cases free from fraud no forfeiture would be incurred where the government is proceeding by examination under section 2801, as I understand was done in this case. They are authorized to make that forfeiture in cases of fraudulent pretenses where the articles do not belong to the class of personal effects or personal baggage. These articles, in my judgment, are dutiable. The officers claim that they are. The case involves that question. I should rule, for the purposes of this trial, that these articles are dutiable if you find that they are excessive in amount. If you find that these articles were bona fide presents to the claimant, Mrs. Dodge,

and that she held them as such, then they belong to the class of personal baggage, or personal effects, and there was no such fraud as warrants a forfeiture for landing without a permit. It is the duty of the government, in such cases, where they are free from fraud, and the government is proceeding under section 2801, to assess and receive the duties instead of forfeiting dutiable baggage. The value of the articles was large. If you find that they were excessive in amount, they were dutiable. That, however, does not warrant a confiscation of them if there was no such fraud as I have spoken of. I can easily imagine that it may be your judgment that they were very much too great in value to pass as things which were appropriate or necessary for a journey from Paris to New York. The question therefore as I said at the outset, is whether this is a false pretext, or whether her story is substantially true.

I do not think slight differences in detail in regard to some of the articles in the account given by the officers here and the story of Mrs. Dodge as to their conversations on the dock are very material, except in so far as affects this main question. It is very easy in a considerable conversation, where there are different articles, that as to some of them the statements made are perfectly correct, while as to some others they are not strictly correct. There is abundant opportunity for misrecollection or misunderstanding of what is intended. As an illustration of that I might mention that this morning, in looking over one of the papers in coming down, my eye lighted on a reference to this case and a reference, in a short paragraph, to Mrs. Dodge's testimony. There was not one thing—scarcely one thing—in the narrative of Mrs. Dodge's testimony that was not stated directly opposite to what her testimony was. The reporter did not intend it. He did not intend to make a misstatement. He did not hear correctly. There was preoccupation of mind; he had got one thing in place of another, so that the result of it was that it was quite wrong.

Now in this case there was a large amount of jewelry that was taken by Mrs. Dodge, as she says, abroad. The custom house officers subsequently returned it on that ground. Taking the articles in bulk, a great proportion of them had been taken abroad and brought back again. Of the pieces seized, her own rose diamonds had entered into the manufacture of two of them. She had taken them abroad, and they were made up for her there. It is easy to misapprehend what the witness has referred to in parts of the conversation. The differences do not necessarily import that there is any intentionally false statement on either side.

Unless I am requested to state something more I shall leave the main question with you in the form I have stated. If these things were brought in here in good faith as things that were hers by right and part of her personal effects, and in accordance with the story in substance as she has stated it, then there should be no forfeiture upon the last three counts of this information.

Mr. SMITH: I ask your honor to inform the jury, so that there shall be no misunderstanding about it, that a verdict in favor of the

claimant in this case is not going to in any way do away with any right of the United States to duties on these goods, and that that question will be settled in a separate and different proceeding; that the government after this case is over will have a lien on these goods for whatever lawful duties it is entitled to recover.

THE COURT: Yes; that is correct, gentlemen.

The jury, after remaining out for 35 minutes, rendered a verdict for the claimant.