UNITED STATES v. ONE PEARL NECKLACE et al.

(Circuit Court of Appeals, Second Circuit. August 22, 1901.)

No. 135.

1. CUSTOMS DUTIES—ADMINISTRATION—ENTRY OF PASSENGER'S BAGGAGE.

Rev. St. §§ 2799, 2801, are not intended to provide alternative methods of dealing with the baggage of a passenger entering the United States, and the discretion given to the customs officers by section 2801 to make an examination of such baggage does not dispense with the necessity of making the entry required by section 2799 in all cases before the baggage can be landed.

2. SAME—FORFEITURE—FAILURE TO MENTION ARTICLE FOR ENTRY.

Any dutiable article found in the baggage of a passenger entering the United States, which was not at the time of making the entry of such baggage under Rev. St. § 2799, "mentioned to the collector before whom such entry was made by the person making the entry," is subject to forfeiture, under the provisions of section 2802, without regard to the

existence of any fraudulent intent: but it is a sufficient "mention" of an article to avoid forfeiture if it is called to the attention of the officer who, as representative of the collector, takes the entry or declaration, although it is not mentioned therein.

8. SAME—EXEMPTIONS—PERSONAL APPAREL AND EFFECTS.

Paragraph 697 of the tariff act of 1897 (30 Stat. 202) places on the free list "such articles of wearing apparel, personal adornment, toilet articles and similar personal effects as are in the use of and accompanying persons arriving in the United States and are necessary and appropriate for the immediate purposes of the journey and their present comfort and convenience: provided that in case of residents of the United States returning from abroad all · wearing apparel and other personal effects taken by them out of the United States to foreign countries shall be admitted free of duty, without regard to their value, * * * but no more than one hundred dollars in value of articles purchased abroad by such residents of the United States shall be admitted free of duty upon their return." *Held*, that such paragraph classifies exempt articles according to the citizenship of the persons arriving in this country, and that the provisions preceding the proviso have no application in case of a citizen of the United States, whose exemptions are those only enumerated in the proviso.

4. SAME—FORFEITURE—FAILURE TO DECLARE FOR ENTRY.

The fact that the printed form for entry of baggage prepared by the · treasury department and presented to passengers entering the country for signature is misleading and unintelligible, or that it is not properly filled out by the customs officers, will not relieve a passenger from the forfeiture consequent upon his failure to mention to the officer articles which are dutiable.

5. SAME—ACTION FOR FORFEITURE—INSTRUCTIONS.

In an action by the United States for a forfeiture of property for an alleged violation of the customs laws, it is error to charge the jury that the government has a lien upon the property, and can recover the duty thereon, although they should return a verdict for defendant, such instruction being irrelevant to the issues, and one which could serve no purpose except to unduly influence the jury.

In Error to the Circuit Court of the United States for the Southern District of New York.

Henry F. Burnett, U. S. Atty.

W. Wickham Smith, for defendants in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The government was the plaintiff in the court below, and brings this writ of error to review a judgment for the claimant entered upon the verdict of a jury. 105 Fed. 357. The action was brought to condemn as forfeited to the United States certain jewelry, the property of the claimant, seized June 24, 1899, by the collector of the port of New York, upon the theory that it had been introduced into the United States in violation of the revenue laws. The information contained four counts. The first count averred that the articles of jewelry were smuggled and clandestinely introduced into the United States, with the intention of defrauding the revenue. This count was abandoned upon the trial. The second count averred that the jewelry was dutiable merchandise fraudulently imported into the United States by the claimant without entering the same for duty, and without paying the duty thereon, and was liable to forfeiture under section 3082 of the Revised Statutes. The

third count averred that the articles were subject to duty, were found in the baggage of the claimant when she arrived within the United States on the steamship St. Paul, and had not been mentioned or declared to the collector at the time of making entry of said baggage, and were liable to forfeiture under section 2802 of the Revised Statutes. The fourth count averred that the articles were subject to duty, and were brought into the United States in the steamship St. Paul, and unladen and delivered within the port of New York from said vessel without a permit from the collector and naval officer according to sections 2872 and 2874 of the Revised Statutes.

Upon the trial of the action the following facts appeared: The claimant, a passenger returning to her home in the city of New York from a visit to Europe, arrived on the steamship St. Paul at the port of New York on the 24th day of June, 1899, bringing with her as baggage several trunks and other parcels of luggage. Before the vessel reached the dock, she made an entry of her baggage, and subscribed and verified by oath the accompanying declaration presented to her by one of the customs officers, in which she specified the number of her trunks and other parcels. The declaration contained the following printed statement:

"That such baggage is my personal property (and that of my maid, who accompanies me); that all of the articles in my baggage or on my person purchased abroad (and intended for others or for sale), and their cost prices paid by me, or by others who have intrusted them to me, are fully set forth and described in the annexed entry; that, with the exception of said articles, the said baggage contains only such wearing apparel and personal effects (as were taken by me and my ———— out of the United States) and includes only such articles as are in the use of and necessary and appropriate for the immediate purposes of the journey and present comfort and convenience of myself (and my ————), and are not articles intended for other persons or for sale."

The entry annexed to the declaration set forth the foreign cost of two articles which she had purchased abroad, but did not mention the cost price of any of the jewelry; nor did it contain anything to indicate that there was any jewelry in the baggage. After the vessel reached the dock, and claimant had disembarked, and her baggage had been landed, and while it was being examined by the customs officers, she was accosted by one of them, and told by him that he was informed that she had with her valuable jewelry which she had not entered for duty in her declaration. He asked her to indicate that part of her baggage in which it could be found, whereupon she stated that her jewelry was in the satchel then in her hands, and handed the satchel to the officer. The satchel was opened, and found to contain, besides toilet articles, jewelry of the dutiable value of over $40,000. Among the jewelry a large necklace of the value of $35,000 and a small one of the value of $4,500 were presents which had been given to her during her visit in Paris shortly before she left to return home. None of the jewelry was entered upon the vessel's manifest. Besides proving the foregoing facts, the government gave evidence tending to show that when the claimant signed the declaration she was asked by the customs officer if she had with

her in her baggage or on her person anything purchased abroad, and made reply that she had the two articles mentioned in the entry, and that when she handed the satchel containing the jewelry to the officer she stated that there was nothing in it but what she had taken from this country abroad. It was further shown that the practice of the treasury department at the port of New York was, and for many years had been, to examine the baggage of passengers upon arriving vessels after such vessels reach their wharf; that when the vessels arrive within the harbor they are boarded by the customs officers, and with their assistance the passengers are asked to subscribe a printed document entitled "Baggage Declaration and Entry," and fill out the blanks therein descriptive of their articles; that when a vessel reaches the wharf all the baggage of the passengers is transferred to a portion of it which is surrounded with a rope and has a gate at which one of the officers is stationed; that the passenger and a customs officer proceed to and select the baggage of the former, and the officer proceeds to examine it; that, if dutiable articles are found in the baggage, one of the appraisers assigned to that dock is called upon to appraise its value, and, after its dutiable value has been fixed, the passenger, accompanied by a customs officer, goes to the desk of the collector, and pays the duty, this desk sometimes being inside the rope and sometimes outside; and that, after the examination is complete, each piece of baggage is marked by the customs officer, and it is then permitted to be removed through the gate.

At the close of the evidence introduced by the government the claimant moved the court to dismiss the information. In denying the motion the trial judge announced that he should rule "that articles belonging to the class of personal baggage or personal effects, although they may be dutiable by reason of their amount, are not to be forfeited, under the present practice of the department, unless there is some concealment or fraud which brings them within some other provision of the Revised Statutes than section 2802." The government then introduced further evidence showing that there were distributed among the passengers of the St. Paul printed circulars such as are customarily distributed by the customs officers upon the arrival of a vessel in the harbor. These circulars were entitled "United States Custom Notice," and read as follows:

"To Passengers Arriving from Foreign Countries: It will be necessary for you to make a declaration before the United States customs officer in the saloon of this vessel stating the number of your trunks and other packages and their contents; and residents of the United States returning from abroad should provide a detailed list of articles purchased abroad, and the prices paid therefor. A failure to declare all dutiable goods in your possession will render the same liable to seizure and confiscation, and yourself to fine and imprisonment. * * * By Order of the Secretary of the Treasury."

The claimant then introduced evidence tending to show that she had not seen any of the circulars distributed on the steamship; that she did not state, when she handed her satchel to the customs officer, that there was nothing in it but what she had taken from this country abroad; that in omitting to mention the jewelry in her declaration

she did not do so intentionally; and that she was throughout acting upon the belief that the jewelry was not dutiable. At the close of the evidence the government moved the court to direct a verdict in its favor upon the three counts of the information. The motion was denied, and the government excepted. The trial judge submitted the case to the jury under instructions which, as we understand them, were, in substance, that if the jewelry was brought in by the claimant without any purpose of escaping the payment of duties, and not as merchandise in the guise of baggage, she was entitled to a verdict. The government excepted to the instructions generally, and especially to the instructions in respect to the necessity of proof of fraud to authorize a verdict of condemnation.

The principal question which has been argued at the bar is whether the court below should not have ruled that the jewelry became liable to forfeiture under section 2802 of the Revised Statutes, irrespective of any evidence of fraudulent intent on the part of the claimant. The statutory provisions which bear upon the question are found in sections 2799, 2801, and 2802 of the United States Revised Statutes. These sections read as follows:

"Sec. 2799. In order to ascertain what articles ought to be exempted as the wearing apparel, and other personal baggage, and the tools or implements of a mechanical trade only, of persons who arrive in the United States, due entry thereof, as of other merchandise, but separate and distinct from that of any other merchandise imported from a foreign port, shall be made with the collector of the district in which the articles are intended to be landed by the owner thereof, or his agent, expressing the persons by whom or for whom such entry is made, and particularizing the several packages, and their contents, with their marks and numbers; and the person who shall make the entry shall take and subscribe an oath before the collector, declaring that the entry subscribed by him and to which the oath is annexed contains, to the best of his knowledge and belief, a just and true account of the contents of the several packages mentioned in the entry, specifying the name of the vessel, of her master, and of the port from which she has arrived; and that such packages contain no merchandise whatever other than wearing apparel, personal baggage, or, as the case may be, tools of trade, specifying it; that they are all the property of a person named who has arrived, or who is shortly expected to arrive in the United States, and are not directly or indirectly imported for any other, or intended for sale."

"Sec. 2801. On compliance with the two preceding sections, and not otherwise, a permit shall be granted for landing such articles. But whenever the collector and the naval officer, if any, think proper, they may direct the baggage of any person arriving within the United States to be examined by the surveyor of the port, or by an inspector of the customs, who shall make a return of the same; and if any articles are contained therein which in their opinion ought not to be exempted from duty, due entry of them shall be made and the duties thereon paid.

"Sec. 2802. Whenever any article subject to duty is found in the baggage of any person arriving within the United States, which was not, at the time of making entry for such baggage, mentioned to the collector before whom such entry was made, by the person making entry, such article shall be forfeited, and the person in whose baggage it is found shall be liable to a penalty of treble the value of such article."

These statutes apparently provide a special system for the entry of dutiable articles contained in the packages of baggage brought by passengers arriving by vessel in the United States from foreign countries. Dutiable articles brought by such passengers, but not

in their packages of baggage, are to be entered as merchandise, pursuant to section 2785 of the Revised Statutes, within 15 days after the report to the collector of the arrival of the vessel; and, if not entered, or if the duty thereon is not paid, and the omission is with fraudulent intent, they are liable to forfeiture by the provisions of section 3082; and, if unladen from the vessel without the payment mentioned in section 2872, they become forfeited by the provisions of section 2874. None of these statutes in respect to the entry and unlading of merchandise have, in our judgment, any application to the case of dutiable articles brought by passengers in their packages of baggage, and as to such articles the entry and unlading is governed by sections 2799 and 2801. The requirement that the entry shall particularize the packages and their contents, and be accompanied with the sworn declaration of the passenger, is doubtless intended to inform the customs officer so fully and specifically about the contents of the packages that no dutiable articles will be likely to be omitted by reason of the ignorance, misapprehension, or deception of the passenger in making his entry. Until this entry has been made, the baggage cannot be landed. After it has been made, and as a further precaution against the introduction of dutiable articles, the customs officers are permitted, if they think proper, to examine the baggage. If they make such an examination, and find in the baggage any articles which they deem dutiable, they are to require due entry of them to be made, together with payment of the duties. But, if an article subject to duty is found in the baggage which was not mentioned to the customs officer when the passenger made his entry, it is liable to forfeiture. This provision refers to articles not mentioned when the passenger has made the entry provided for by section 2799. The terms of the three sections do not sanction a construction whereby the forfeiture is saved if the passenger mentions the dutiable articles when a new entry is required, and they have been discovered by the customs officers in examining the baggage. The three sections are a modification of provisions originally embodied in the act of March 2, 1799. In that act the provision embodied in section 2801 permitted the entry by the passenger previous to the examination of the baggage to be dispensed with at the discretion of the customs officer, and an examination of the baggage substituted. The ruling of the court below seems to have been made upon the theory that section 2801 was open to the same construction, that it was competent for the custom-house officers to forego a compliance by the passenger with the making of the entry and declaration prescribed by section 2799, and that in such case the passenger would not incur liability of forfeiture for not mentioning dutiable articles in his entry. In the revision of statutes any language of the original act which justified the construction that the entry pursuant to section 2799 was a matter optional with the customs officers has been eliminated, and, as the language is plain and unequivocal, we are not permitted to resort to the original act to interpret the section differently from its terms. As the sections now read, there must be an entry pursuant to section 2799, and there may also be an examination of the baggage, and a further entry, pursu-

ant to section 2801, if dutiable articles are found. They do not contemplate a formal custom-house entry,—probably because this would put the passenger to needless delay and inconvenience; though doubtless, under the statutory powers of regulation conferred upon the secretary of the treasury, it would be competent for the treasury department to require such an entry. The forfeiture provision does not mean necessarily that the article is subject to forfeiture whenever it appears that it was not mentioned in the entry or the declaration. The statute does not so declare, and as a penal statute it is not to be enlarged by implication to embrace cases not within its terms. The entry and declaration by the passenger are usually made upon the vessel, and often hurriedly, and omissions may occur in the documents from inadvertence or ignorance as well as from intention. The documents are executed in the presence of the customs officer who administers the oath to the declaration, and who is the representative of the collector in receiving the entry; and, if these omissions are brought to his notice by the passenger, it would seem to be sufficient to satisfy the statute. If at any time while the entry is being made, and before it is completed, there is a disclosure by the passenger which is sufficient to put the customs officer upon inquiry as to the dutiable character of any of the contents of the packages, we think that within the meaning of the statute it is to be deemed that the articles were "mentioned to the collector before whom such entry was made," notwithstanding they were not mentioned in the documents. Of course, if the articles are mentioned in the entry or declaration, they are mentioned to the collector. Section 2802 does not make the element of fraudulent intent an ingredient of the cause of forfeiture.

If we have correctly interpreted these sections, it follows that, if the claimant omitted to mention the jewelry to the customs officer who received her entry made before the examination of her baggage, the articles became liable to forfeiture if they were in fact dutiable. Concededly, the two necklaces were subject to duty in about the amount of $24,000, unless exempt by the provisions of paragraph 697 of the tariff act of July 24, 1897 (30 Stat. 202). That paragraph places upon the free list "such articles of wearing apparel, personal adornment, toilet articles, and similar personal effects as are in the use of and accompanying persons arriving in the United States and are necessary and appropriate for the immediate purposes of the journey and their present comfort and convenience: provided, that in case of residents of the United States returning from abroad, all wearing apparel and other personal effects taken by them out of the United States to foreign countries shall be admitted free of duty, without regard to their value, upon their identity being established, under appropriate rules and regulations to be prescribed by the secretary of the treasury, but no more than one hundred dollars. in value of articles purchased abroad by such residents of the United States shall be admitted free of duty upon their return." As we read this paragraph, it classifies exempt articles according to the citizenship of the persons arriving in this country. The proviso carves out an exception from the general clause in the case of our own citizens,

and the general clause as to them is as if it did not exist. Taken together, the clause seems to be designed to permit foreigners coming here as visitors or intending to remain to bring with them, without paying duties, such of the articles enumerated as are appropriate for the purposes of the journey,—or, in other words, whatever is included in the term "baggage" according to judicial definition,—and to restrict our own citizens returning from abroad to bringing in free of duty such baggage as they may have seen fit to take with them upon a foreign journey, together with articles purchased abroad, not exceeding in value $100. Unless the articles belong in one of the two categories, they are not exempt; and it is wholly immaterial whether they are purchases or presents, or whether they belong to the person bringing them. We cannot doubt that the jewelry was dutiable.

We are unable to appreciate the argument for the defendants in error that, because of the misleading and unintelligible form of the declaration, the jewelry was not liable to forfeiture. The forms are prepared by the treasury department for the convenience of passengers, and to facilitate the making a sufficient entry of their baggage. The form in question was prepared for the purposes of section 2799. It is not perspicuous, and is discreditable to the department, because it is calculated to befog the understanding of those to whom it is presented. It was evidently prepared for two classes of passengers, foreigners and our own citizens. If some of the clauses had been erased by the claimant or the customs officer who received it, the declaration would have fully served the purpose of the section. But, however inappropriate, or even misleading, the form may have been, the circumstance does not help the claimant. The statute imposed upon her the duty of making a proper entry and declaration, and she could not escape the obligation by transferring it to any other person. If the customs officer, in assisting her in doing what she was bound to do herself, did not exercise due care to correct the printed form presented to her, the consequences must fall upon her, however great may be the hardship. But there was no element of hardship in the case. It was not because she made a declaration and entry which may have been obscure and unintelligible to her that she subjected her property to forfeiture. If she had suggested to the customs officer that she had in her baggage such valuable jewelry, she would have been safe. It would seem that an ordinarily honest and intelligent person would, under the circumstances, have done so.

The statutes confer upon the secretary of the treasury the widest discretion to remit forfeiture and penalties accruing for a violation of the customs and revenue laws. This discretion has always been liberally exerted in cases where violation was unintentional or excusable upon any consideration.

In ruling, as the court below did, that it was necessary for the government to show an intent to defraud the revenue on the part of the claimant in order to maintain its action, and unless the jury found fraud it was their duty to find for the claimant, we are of the opinion that error was committed, which should lead to a reversal

of the judgment. We also think that the court should have refused the instruction requested in behalf of the claimant to the effect that, if the jury should render a verdict in her favor, the government would have a lien upon the jewelry, and could recover whatever lawful duties they were subject to. The instruction could have served no other purpose than to unduly influence the jury in her behalf, and incline them to find in her favor upon the theory that, in any event, the government could not be a loser by their verdict. It submitted to the jury a consideration which was wholly extraneous to the controversy to be decided.

The judgment is reversed.

LACOMBE, Circuit Judge. I concur in the conclusions and. in nearly all that is said in the opinion of the majority of the court. As to paragraph 697, however, I do not concur in any construction which applies the $100 restriction to articles "purchased abroad" unless they are purchased by the "returning resident" of the United States. The language of the paragraph precludes any such construction, although, of course, on the theory of inherent absurdity, the paragraph may be construed in the teeth of its text, as in the Holy Trinity Case, 12 Sup. Ct. 511, 36 L. Ed. 226. But to me there is nothing inherently absurd in the exemption of presents received abroad. Inasmuch, however, as claimant was a "person arriving in the United States," I am unable to see why the provisions of the first half of this paragraph do not apply; and, inasmuch as the two necklaces were not necessary or appropriate for the immediate purposes of the journey, reach the same conclusion as the majority of the court. With regard to the extraordinary form of entry which was presented to the unfortunate passengers arriving on this steamer, it would seem that the treasury department was not responsible. By circular No. 141 (Treas. Dec. 1897, p. 816) that department instructed the customs officers as follows:

"In order that passengers may be duly apprised of the requirements of the law, a notice to passengers which will contain a copy of paragraph 697 in full and a reference to the provisions of law as to undervaluation and bribery, will be distributed among the passengers."

This instruction exhibits most careful consideration for the incoming passengers, but the so-called "circular" proved in this case wholly fails to comply with the instructions.