(C. D. 1561)

HUDSON SHIPPING CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 24, 1953)

*Sharretts, Paley & Carter (Howard C. Carter* and *Amos B. Sharretts* of counsel) for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*Harold L. Grossman,* special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This protest is directed against the exaction by the collector of certain charges for cartage, labor, and storage on an importation of four packages of antique watches and clocks which arrived in the baggage of Count Giulio Belinzaghi on the S. S. *America* on March 31, 1949. The protest alleges that the "General Order"

charges amounted to $141.35 and claims that they were illegally and improperly collected and should be refunded.

The case was submitted on an agreed statement of facts, which reads as follows:

1. That Count Giulio Belinzaghi arrived in the United States on board the S. S. America on Thursday, March 31, 1949.

2. That he filed baggage declaration No. 1053006 on which he declared the following:

> 3 cases (wooden) containing 1114 antique watches as per consular invoice about $55,000

3. That the Customs officer checking said baggage declaration noted thereon the following:

> One (1) package (additional) containing keys, chains, links, etc.—and Three (3) cases said to contain 1114 watches (antique)—valued at $55,000. To be sent to P. S. for formal entry.

4. That the instant merchandise was unladen from the S. S. America, and landed on the wharf on March 31, 1949.

5. That in accordance with Section 431 of the Tariff Act of 1930 the vessel's manifest contained a passenger list under the title "Manifest of Inbound Passengers, Aliens," which list included the name of the instant passenger, and in a column headed "Number and Description of Pieces of Baggage," opposite the name of the instant passenger appeared the numeral 5, as exemplified by Defendant's Collective Exhibit C, which we now offer in evidence.

\*      \*      \*      \*      \*      \*      \*

\* \* \* 6. That pursuant to Section 10.21 (e), Customs Regulations 1943, the Customs inspector at the pier advised Count Giulio Belinzaghi that formal entry had to be made of the aforementioned merchandise.

7. That formal entry 353629 covering the aforesaid merchandise was made on April 4, 1949, and that on that date a permit for the release of the said articles was duly issued.

8. That the said permit for the release of the aforesaid articles was not lodged with the Customs inspector at the pier or the inspector in charge of the baggage room on or before 5:00 P. M. of April 4, 1949.

9. That an application was timely made by the United States Lines Co. on Customs Form 3189, and a permit was duly granted by the Collector of Customs at New York to allow the unladened but not permitted cargo of the S. S. American [sic] to remain on the wharf until 5:00 P. M. of April 6, 1949.

10. That the permit for the release of the aforesaid merchandise was lodged with the Customs inspector on or before 5:00 P. M. of April 6, 1949.

11. That no special request for an extension of the "lay order" or general order period was made by the importer.

12. That at no time was any specific extension of the "lay order" or general order period made with respect to the baggage on the S. S. America.

13. That the aforesaid 3 cases of antique watches and the package of keys, chains, and links, etc., were sent to the Appraiser's Stores on April 4, 1949.

14. That the importer herein paid to the Collector the sum of $69.63 as charges for storage and labor, as evidenced by the receipts numbered 195923 and 195929, hereto attached, and that said receipts are herewith offered in evidence, and requested be marked Plaintiff's Collective Exhibit 1.

\*      \*      \*      \*      \*      \*      \*

* * * 15. That the importer herein likewise paid the sum of $71.72 to the Keahon Trucking Corporation, a bonded contract cartman, for transferring the watches to the Appraiser's Stores, as evidenced by receipt number 9581, which we herewith offer and request be marked in evidence as Plaintiff's Exhibit 2.

\*       \*       \*       \*       \*       \*       \*

* * * 16. That a photostatic copy of the application and permit to lade or unlade vessels of 5 net tons or more numbered 6509 and dated March 29, 1949 is herewith offered in evidence and requested to be marked Defendant's Exhibit A.

\*       \*       \*       \*       \*       \*       \*

* * * 17. That a photostatic copy of Customs Form 3189, entitled "Application and permit to allow unpermitted cargo to remain upon wharf beyond 48-hour period" is herewith offered in evidence and requested to be marked Defendant's Exhibit B.

At the hearing, the Government moved to dismiss the protest insofar as it concerned the sum of $71.72 paid to Keahon Trucking Corp. on the ground, first, that the protest does not cover said sum but requests a refund of the general order charges, and, second, that the court has no jurisdiction under section 514 of the Tariff Act of 1930 to order a refund of that sum since it was never paid to the Government.

The pertinent provisions of the Tariff Act of 1930 are as follows:

SEC. 431. MANIFEST—REQUIREMENT, FORM, AND CONTENTS.

The master of every vessel arriving in the United States and required to make entry shall have on board his vessel a manifest in a form to be prescribed by the Secretary of the Treasury and signed by such master under oath as to the truth of the statements therein contained. Such manifest shall contain:

First. The names of the ports or places at which the merchandise was taken on board and the ports of entry of the United States for which the same is destined particularly describing the merchandise destined to each such port: *Provided,* That the master of any vessel laden exclusively with coal, * * * or other merchandise in bulk consigned to one ówner and arriving at a port for orders, may destine such cargo "for orders," * * *.

\*       \*       \*       \*       \*       \*       \*

Third. A detailed account of all merchandise on board such vessel, with the marks and numbers of each package, and the number and description of the packages according to their usual name or denomination, such as barrel, keg, hogshead, case, or bag.

\*       \*       \*       \*       \*       \*       \*

Fifth. The names of the several passengers aboard the vessel, stating whether cabin or steerage passengers, with their baggage, specifying the number and description of the pieces of baggage belonging to each, and a list of all baggage not accompanied by passengers.

SEC. 448. UNLADING.

(a) PERMITS AND PRELIMINARY ENTRIES.—Except as provided in section 441 of this Act (relating to vessels not required to enter), no merchandise, passengers, or baggage shall be unladen from any vessel or vehicle arriving from a foreign port or place until entry of such vessel or report of the arrival of such vehicle has been made and a permit for the unlading of the same issued by the collector; *Provided.* That the master may make a preliminary entry of a vessel by making

oath or affirmation to the truth of the statements contained in the vessel's manifest and delivering the manifest to the customs officer who boards such vessel, but the making of such preliminary entry shall not excuse the master from making formal entry of his vessel at the customhouse, as provided by this Act. After the entry, preliminary or otherwise, of any vessel or report of the arrival of any vehicle, the collector may issue a permit to the master of the vessel, or to the person in charge of the vehicle, to unlade merchandise or baggage, but except as provided in subdivision (b) of this section merchandise or baggage so unladen shall be retained at the place of unlading until entry therefor is made and a permit for its delivery granted, and the owners of the vessel or vehicle from which any imported merchandise is unladen prior to entry of such merchandise shall be liable for the payment of the duties accruing on any part thereof that may be removed from the place of unlading without a permit therefor having been issued. Any merchandise or baggage so unladen from any vessel or vehicle for which entry is not made within forty-eight hours exclusive of Sunday and holidays from the time of the entry of the vessel or report of the vehicle, unless a longer time is granted by the collector, as provided in section 484, shall be sent to a bonded warehouse or the public stores and held as unclaimed at the risk and expense of the consignee in the case of merchandise and of the owner in the case of baggage, until entry thereof is made.

SEC. 490. GENERAL ORDERS.

(a) INCOMPLETE ENTRY.—Whenever entry of any imported merchandise is not made within the time provided by law or the regulations prescribed by the Secretary of the Treasury, or whenever entry of such merchandise is incomplete because of failure to pay the estimated duties, or whenever, in the opinion of the collector, entry of such merchandise can not be made for want of proper documents or other cause, or whenever the collector believes that any merchandise is not correctly and legally invoiced, he shall take the merchandise into his custody and send it to a bonded warehouse or public store, to be held at the risk and expense of the consignee until entry is made or completed and the proper documents are produced, or a bond given for their production.

SEC. 498. ENTRY UNDER REGULATIONS.

(a) AUTHORIZED FOR CERTAIN MERCHANDISE.—The Secretary of the Treasury is authorized to prescribe rules and regulations for the declaration and entry of—

\*  \*  \*  \*  \*  \*  \*

(6) Articles carried on the person or contained in the baggage of a person arriving in the United States;

The pertinent provisions of the Customs Regulations of 1943 are as follows:

**4.37 Lay order; general order.**—(a) Any merchandise or baggage regularly landed but not covered by a permit for its release shall be allowed to remain on the wharf or pier until 5 p. m. on the second working day after the day the vessel was entered. At the expiration of such period, any merchandise or baggage so remaining shall be deposited in the public stores or a general-order warehouse, except that, at the written request of the owner, agent, or master of the vessel, filed in duplicate on customs Form 3189, and at the risk of the owner of the vessel, the collector may issue a lay order allowing such merchandise or baggage to remain on the wharf or pier properly protected for a further period, which shall be specified in the order.

(b) All merchandise or baggage unladen from a vessel for which no permit has been received before expiration of the original 2-day period, or extension

thereof, shall be sent to the public stores or a general-order warehouse and held as unclaimed at the risk and expense of the consignee or owner.

**10.19 Declaration and entry.**

\*      \*      \*      \*      \*      \*      \*

(*i*) *Regular entry.*—Subject to any applicable exemption from entry requirements, articles imported as baggage but not passed under a baggage declaration or under the procedure provided for in section 10.20 shall be entered in the same manner as a cargo importation of like goods. \* \* \*

**10.21 Examination procedure; collection of duties and taxes.**

\*      \*      \*      \*      \*      \*      \*

(*e*) Articles not described in paragraph (*b*) of this section, having an aggregate value over $100 but not over $500, may be entered and cleared on a baggage declaration at the place of their arrival with a passenger, provided the articles are accompanied by a proper certified invoice if one is required, and provided it is practicable to make the required formal appraisement at that place. If the foregoing requirements are not satisfied, or if the value of such articles is over $500, regular entry shall be required.

According to the agreed statement of facts, *supra*, the articles involved in this case arrived in the baggage of Count Giulio Belinzaghi (hereinafter called the importer) and were unladen on the date the vessel reached port, Thursday, March 31, 1949. Therefore, under section 448 (a), Tariff Act of 1930, and section 4.37 (a), Customs Regulations of 1943, the period during which they were permitted to remain upon the wharf expired at 5 p. m. on April 4, 1949, unless a longer time was granted. An application for additional time was made by the United States Lines as to general cargo, except grapes and narcotics, and the period for its entry and removal was extended to 5 p. m. on April 6, 1949.

The instant merchandise was listed on the importer's baggage declaration, being valued at about $55,000. In accordance with the regulations issued under section 498, Tariff Act of 1930, the customs inspector advised the importer that a formal entry had to be made. Such entry was made on April 4, 1949, and a permit for the release of the articles was issued. This permit was lodged with the customs inspector at some time after the original 48-hour period had expired but prior to the expiration of the extension allowed for general cargo. By that time, the merchandise had been sent to the appraiser's stores pursuant to the provisions of section 448 (a), Tariff Act of 1930, and section 4.37 (b), Customs Regulations of 1943.

The point at issue is whether the extension of time granted on the application of the United States Lines covered the merchandise herein, which was brought in as a part of importer's baggage. Plaintiff claims that it did, and that, therefore, the importer completed entry and filed his permit for release in time and is not liable for storage and other charges. It is conceded, however, that if the extension did not apply to the instant merchandise, then, since the permit for its release

was filed after the expiration of the original permissive period, the importer did not perfect his right to remove the merchandise from the pier in time, and the risk and liability for its removal and storage falls on him under the statutes (sections 448 (a) and 490, Tariff Act of 1930).

Plaintiff contends that the ordinary meaning of the term "cargo" includes merchandise brought in with a passenger's baggage. That term has been defined as the lading or freight of a vessel; the goods, merchandise, or whatever is conveyed in a vessel. Generally, it applies to goods only, but in a broader sense it includes persons and live animals. (Webster's New International Dictionary (1951 ed.); Funk & Wagnalls New Standard Dictionary (1941 ed.); Encyclopaedia Britannica, vol. 4, p. 861; Black's Law Dictionary.) In our view, however, the meaning of the term "cargo," insofar as the present case is concerned, must be drawn from the tariff statutes.

An examination of the administrative provisions of the Tariff Act of 1930, especially sections 431 to 467, inclusive, and certain related statutes (19 U. S. C. §§ 267, 289, 293), discloses that they repeatedly refer to merchandise and baggage, or passengers, merchandise, and baggage, and that the term "cargo," when used at all, pertains to merchandise only, usually bulk merchandise. For instance, section 431 provides that the manifest shall state, among other things, (1) the names of the ports at which the *merchandise* was taken on board and the ports of entry of the same, (3) a detailed account of all *merchandise* on board, (5) the names of the several passengers with their *baggage*, specifying the number and description of the pieces of baggage belonging to each. The word "cargo" is used only in the proviso to the first requirement, wherein the term refers to bulk merchandise. Section 442 uses the term "residue cargo" to describe merchandise destined for a port other than the port of entry, and section 447 refers to cargo to be unladen elsewhere than at the port of entry. Section 449 states that those sections relate to residue cargo and to bulk cargo, respectively. Reference is made to "merchandise and baggage" or "passengers, baggage, and merchandise" in sections 441 (2), 448, 449, 450, 451, 452, 453, 459, 461, and 467.

Note also 19 U. S. C. § 267 authorizing the Secretary of the Treasury to fix overtime compensation for customs employees who perform services in connection with the lading or unlading of cargo, or in connection with the unlading, receiving, or examination of passengers' baggage. This provision was involved in *International Railway Co.* v. *Davidson*, 257 U. S. 506, wherein the court stated (pp. 512–514):

\* \* \* The clause in the amendment of 1920 by which the extra compensation payable under §5 is extended to cover overtime "in connection with the unlading, receiving, or examination of passengers' baggage" is given full effect, if applied to the baggage of passengers on those vessels for the immediate lading and unlading

of whose cargoes special license may issue under the first four sections of the Act of 1911. That these were the only overtime services in connection with passengers for which the amendment made provision is confirmed by its history. The injustice of denying to customs officials compensation for such overtime services was obvious. But the Secretary of the Treasury had been advised, after the passage of the Act of 1911, as well as before, that he was without power to make— or to require the vessel owner to make—any payment therefor, since *passengers' baggage is not "cargo"*, 30 Ops. Atty. Gen. 123. To remedy this and other defects in the provision for extra pay, the amendment was introduced at the instance of the Treasury Department, with the approval of the United States Shipping Board and of the American Steamship Association.

Congress created two distinct systems for the examination of articles coming from foreign countries. One dealt with articles imported as merchandise; the other with passengers' baggage and personal effects. That distinction, established by the Act of March 2, 1799, c. 22, 1 Stat. 627, has been preserved in all later legislation. *One Pearl Chain* v. *United States*, 123 Fed. 371, 374. For merchandise there are elaborate provisions concerning entry, manifests, unloading, invoices, consular certificates and bills of lading. * * * Compliance with these requirements necessarily involves delays. Concerning passengers' baggage and effects the provisions are much simpler. They are designed to secure expeditious entry. * * * That Congress intended by the Act of 1920 to abandon this distinction between merchandise and passengers' baggage which had been carefully preserved in the Act of 1911, is not to be assumed. [Emphasis supplied.]

Furthermore, articles found in the baggage of a passenger are to be distinguished from "imported merchandise," since the scheme for the entry and collection of duties upon imported merchandise is different from that provided for the entry and collection of duties upon baggage and dutiable articles contained therein. *United States* v. *One Pearl Necklace*, 111 Fed. 164; *Harts* v. *United States*, 140 Fed. 843.

The articles involved herein, therefore, are not to be considered as "merchandise" or as "cargo," but as "baggage." While a regular entry was required to be made for the articles, that did not change their status from that of "baggage" to that of "cargo." Note section 10.19 (*i*), Customs Regulations of 1943, *supra*, stating that articles imported as baggage but not passed under a baggage declaration "shall be entered *in the same manner as a cargo importation of like goods.*" [Italics supplied.] The articles do not become "cargo," even though they must be entered in like manner as a cargo importation.

We are of opinion that articles brought in as part of a passenger's baggage are not "cargo" under the tariff statutes, and the regulations issued thereunder, and that the permit herein allowing general cargo, except grapes and narcotics, to remain upon the wharf until 5 p. m. of April 6, 1949, did not extend to, and was not intended to extend to, passengers' baggage or articles brought in therewith. Under the terms of the permit, the owners of the vessel agreed to indemnify the collector for any losses resulting from the granting of the application. It is common knowledge that passengers landing from a ship ordinarily remove the baggage and other articles they bring in as soon as customs

officials permit. Inspection is expeditious, and passengers leave the wharf with their possessions within a few hours at most. It cannot be assumed, therefore, that the United States Lines in applying for an extension of time for the entry and removal of "general cargo," or the collector in granting the same, intended to include passengers' baggage or articles brought in therewith, since they are ordinarily removed long before the 48-hour period expires.

On the record presented, we hold that the articles involved in the instant case were carried on the ship's manifest as baggage and were listed on the passenger's baggage declaration; that they were not "cargo," as that term is used in tariff statutes and regulations; and that they were not covered by the permit extending the time for the entry and removal from the wharf of "general cargo" of the S. S. *America* until 5 p. m. on April 6, 1949. Therefore, the importer was required to enter the same and deliver a permit for their release to the inspector in charge prior to 5 p. m. on the second working day after the vessel was entered, that is, April 4, 1949. Since he did not do so, the risk and expense for their removal and storage falls upon him under sections 448 (a) and 490 of the Tariff Act of 1930.

In view of this disposition of the case, it is unnecessary to pass upon the points raised by the Government's motion to dismiss the protest insofar as it concerns the sum paid to Keahon Trucking Corp., and we express no opinion in regard thereto.

The protest is overruled and judgment will be rendered for the defendant.