## RITTERMAN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. June 10, 1926.)

No. 392.

Customs duties ⊙=123—Accused, who denied having anything to declare before declaration was required at port of entry, but on being searched while entry was being made admitted that his bag contained diamonds, held not guilty of smuggling (Tariff Act 1922, § 593 [Comp. St. Ann. Supp. 1923, §§ 5841h12, 5841h13]).

Where accused denied having anything to declare, and on reaching first port of entry repeated his denial, but on being searched stated that he had diamonds in his bag, which had been checked *held* that, in absence of evidence that he knew bag was in custom house when he stated he had nothing to declare, he was not guilty of smuggling, under Tariff Act 1922, § 593 (Comp. St. Ann. Supp. 1923, §§ 5841h12, 5841h-13); disclosure while entry was being made and before it was completed being sufficient to avoid guilt.

In Error to the District Court of the United States for the District of Vermont.

Leib Ritterman was convicted of smuggling, in violation of Tariff Act 1922, § 593, and he brings error. Reversed.

Barnes, McKenna & Halstead, of New York City (Albert MacC. Barnes, Jr., and James M. Snee, both of New York City, of counsel), for plaintiff in error.

Harry B. Amey, U. S. Atty., of Island Pond, Vt., and Allen Martin, Asst. U. S. Atty., of Essex Junction, Vt.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The indictment charged the defendant with crime in eight counts, but one of which was submitted to the jury. That count charged that on the 28th of January, 1926, while the plaintiff in error was a passenger on an international train from Montreal to New York, he did, within the district of Vermont, with intent to evade the payment of certain duties on some unset cut diamonds of great value, unlawfully, willfully, knowingly, and feloniously smuggle and clandestinely introduce them into the United States, without making any proper declaration to any customs officer of the United States, and without causing the diamonds to be invoiced for the purpose of ascertaining the duties thereon. It set forth that the plaintiff in error had an opportunity so to do and failed.

Before leaving Montreal, he went to the United States customs office there and offered a traveling bag for inspection prior to checking it through to New York City. He was asked if it contained his personal effects, to which he answered in the affirmative. The bag was inspected, corded, and sealed, and the manifest was marked with baggage check number by the customs officer, and it was sent on the same evening train over the international railroad on which the plaintiff in error traveled. The customs officer was instructed to watch the plaintiff in error. On the train, plaintiff in error was asked by the customs inspector whether he had anything to declare, first in Canada and later in Vermont, to which he answered, "No." The inspector went to the baggage car and verified the fact that the traveling bag was there by looking at the number on the manifest and saw that the seal was intact. One of the government inspectors testified that, while in Canada, on the first inquiry of the plaintiff in error whether he had anything to declare, he said, "No, there it is," pointing to a small handbag at his berth, and, on the second inquiry as to whether he had anything to declare, he said, "No."

When the train arrived at Swanton Junction, Vt., the plaintiff in error was asked by the deputy inspector of customs if he had anything to declare, and replied that he had not. However, at this time no reference was made to the bag in the baggage car. When the train arrived at St. Albans, Vt., which was the first port of entry and the first opportunity to declare the diamonds, the plaintiff in error was requested to leave the train, and there was confronted by the collector of customs, and the bag was removed from the baggage car to his office. But this was without the knowledge of the plaintiff in error. He was then asked if he had anything to declare, to which he answered, "No." Asked if he had any diamonds to declare, he answered, "No, sir." He was asked, "Are you sure you have nothing to declare?" and he said, "I have nothing to declare." A third question was asked, "Have you any diamonds to declare?" to which he answered, "No, sir." He was then asked if he had in his baggage or on his person any articles intended for any other person or for sale, or purchase by him on commission for others, which he had not declared to the collector, and he answered, "No." Further, he was asked, "Have you any articles in your baggage or on your person that belongs to any other person?" and his answer was, "No." He was then told that the officers had information to the effect that he had a quantity of diamonds in his possession the day before in Montreal, and he replied,

"I did; I placed those diamonds in the safety deposit box of the Bank of Nova Scotia in Montreal."

Thereupon the customs inspector told him it would be necessary to examine his person. He stepped into an adjoining room and an examination was thereupon made. He was asked to remove his hat, coat, overcoat, collar, and necktie. He was asked for the key of his bag, which he gave after the second request. While removing his clothing, he said that he would like to talk to one of the inspectors alone. He said to one of the inspectors, "I have got to speak to you alone," to which the inspector said, "Come into the other room;" and he said, "I haven't the diamonds on my person; they are in my grip." This was then repeated in the presence of another inspector. The bag was opened and the diamonds were found; some in a pocket inside the collar box, others in socks, and still more in a talcum powder box. The diamonds thus found were valued at $122,492.43, and these were seized. No evidence was offered on behalf of the defendant. Upon these facts he was convicted of the charge submitted to the jury.

The court charged the jury that "if you find that the defendant falsely and fraudulently, intending to defraud the revenue of the United States, told Collector Whitehill and Assistant Collector Walsh at the customs house that he did not have any diamonds to declare, this completed the offense of smuggling, notwithstanding that later, while his person was being searched by Assistant Collector Walsh at the customs house, he admitted that he had some diamonds in his Gladstone bag." Exception was taken to this charge, and it is assigned as error.

If the facts, as thus proven by the government, did not constitute the offense of smuggling under section 593 of the Tariff Act of 1922, this charge was erroneous. We think it did not. That section provides:

"(a) If any person knowingly and willfully, with intent to defraud the revenue of the United States, smuggles, or clandestinely introduces, into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, every such person, his, her, or their aiders, and abettors, shall be deemed guilty of a misdemeanor. * * *

"(b) If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding $5,000 nor less than $50, or be imprisoned for any time not exceeding two years, or both."

42 Stat. 858 (Comp. St. Ann. Supp. 1923, §§ 5841h12, 5841h13).

In Keck v. United States, 172 U. S. 434, 19 S. Ct. 254, 43 L. Ed. 505, it was held that an offense under subdivision (a) of this section is not committed by an act done before the obligation to pay or account for the duties arises, although acts on the part of the prisoner may indicate a future purpose to evade when the period of payment or securing the payment of duties has been reached. Keck, through a confederate in Europe, gave a package of diamonds to a ship's captain to bring to the United States and send to him at Cincinnati. The package was taken by the captain, and when the vessel arrived at Philadelphia it was boarded by a Treasury agent, who had information that the captain was endeavoring to smuggle diamonds at the instance of Keck. The captain was asked if he had a package of diamonds for Coaterman Diamond Company, 24 West Fourth street, Cincinnati, Ohio, to which he answered, "No, I have no such package." The agent said, "I beg leave to differ with you," and said, "You have a small package which you received while in Antwerp." To which the captain replied, "I have a package for Van Reeth of 21 West Fourth street, Cincinnati, and I will give it to you if you have an order for it." Later, on learning that the man talking to him was a customs officer, and being told that he could be arrested, the captain delivered over the package of diamonds. The jury was instructed that, "if the statement made here under oath by Capt. Loesewitz respecting his receipt of the package of diamonds in Antwerp and bringing them here are true, the defendant is guilty of the offense charged."

This was urged as error, and in reversing the conviction the Supreme Court said:

"Whatever may be the difficulty of deducing solely from the text of the statute a comprehensive definition of smuggling or clandestine introduction, two conclusions arise from the plain text of the law: First. That whilst it embraces the art of smuggling or clandestine introduction, it does not include mere attempts to commit the same. Nothing in the statute by the remotest possible implication can be found to cover mere attempts to commit the offense referred to. * * *

Second. That the smuggling or clandestine introduction of goods referred to in the statute must be 'without paying or accounting for the duty,' is also beyond question. From the first of the foregoing conclusions it follows that mere acts of concealment of merchandise on entering the waters of the United States, however preparatory they may be, and however cogently they may indicate an intention of thereafter smuggling or clandestinely introducing, at best are but steps or attempts not alone in themselves constituting smuggling or clandestine introduction. From the second, it results that as the words, 'without paying or accounting for the duty' imply the existence of the obligation to pay or account at the time of the commission of the offense, which duty is evaded by the guilty act, it follows that the offense is not committed by an act done before the obligation to pay or account for the duties arises, although such act may indicate a future purpose to evade when the period of paying or securing the payment of duties has been reached."

The court pointed out that, if such were not the construction of the statute, the offense of smuggling or clandestine introduction might be committed as to goods, although entry of such goods had been made and all legal duties had been paid before the goods had been unshipped. Further it was said:

"For, although it was contended that the offense was complete the moment the concealment existed when the ship arrived within the waters of the United States, it was yet conceded that if in legal time the duties were subsequently paid or secured, there would have been no offense committed. But the contention and the admission are completely irreconcilable, since if the subsequent act becomes necessary in order to determine whether an offense has been committed, it cannot in reason be said that the offense was complete and had been committed before the subsequent and essential act had taken place."

In United States v. One Pearl Chain, 139 F. 513, 71 C. C. A. 500, this court had occasion to consider what constituted smuggling or clandestinely introducing a pearl chain into the commerce of the United States without paying customs duties. There a woman had made a prior declaration omitting the pearl chain. The special Treasury agent approached her, told her he knew she had purchased a pearl necklace in Paris, which she had omitted to declare, and asked her to introduce it. She first said that she had one of her necklaces mended at Tiffany & Co., and that she had not purchased any necklace, but, being pressed further, said she had purchased the neck-

lace. In response to her request that she produce it, she returned on board with the officer and her husband and gave it to him. He put it in his pocket and walked away. We held that she could not, under such circumstances, be held for failure to make a declaration of entry, and said:

"If, instead of requiring the passenger to make due entry of dutiable articles which such passenger produces, they elect to seize and remove them before the passenger is called upon to complete his entry, he is not to be held responsible for failure to include them in the itemized entry, provided he has mentioned them to the customs officer when he first made his entry."

This court further said that, "until the obligation to pay or account for the duties arises, the offense of smuggling is not complete, and no cause of forfeiture accrues."

The customs officers knew that the plaintiff in error had the diamonds when he became a passenger and sent his bag through to New York. Under section 461 of the Tariff Act of 1922 (42 Stat. 858 [Comp. St. Ann. Supp. 1923, § 5841e30]), the baggage should have been unladen in the presence of the owner and inspected by the customs officer "at the port of entry at which the same shall arrive," and it is required that the person having charge or possession of any trunk or traveling bag must open the same for inspection and furnish a key or other means for opening the same. The law does not contemplate taking a key from a passenger and opening and examining the bag at some place other than in the passenger's presence. This court pointed out in United States v. One Pearl Necklace, 111 F. 164, 49 C. C. A. 287, 56 L. R. A. 130, that "if at any time while the entry is being made, and before it is completed, there is a disclosure by the passenger, which is sufficient to put the customs officers upon inquiry as to the dutiable character of any of the contents of the packages, we think that within the meaning of the statute it is to be deemed that the articles were mentioned to the collector before whom such entry was made."

On this record there is no proof that the plaintiff in error, until in the course of the search of his person and before its completion, was requested to give up the key to the bag, nor is there proof that he knew at that time that the bag was in the customs house. When he gave up the key and stated that he had no diamonds to declare, he did not commit the offense of smuggling the merchandise within the statute. When he later said, "I haven't the diamonds on my person; they are

in my grip," it was prior to a time that a declaration was required of him at a port of entry, which was St. Albans, Vt. The collector, not being satisfied with the knowledge that the diamonds were in the bag, completed his search of his person and found nothing.

The jury might well have found that there was an attempt on the part of the plaintiff in error to smuggle the merchandise through the customs, but that offense was not completed, and under the authorities referred to no violation of section 593 was committed. In Newman v. United States (C. C. A.) 276 F. 798, the defendant was a passenger on a steamship, and left the ship when an inspector of customs, who had his baggage declaration on the pier, asked him whether he had anything to declare, and he answered in the negative. The same question was asked by the deputy surveyor of customs, and the same answer given. Later a government appraiser was called, who appraised the articles in his declaration, and went aboard the ship into his cabin and searched him. Two fountain pens were removed from one of his vest pockets, and, when the officers heard a rattle of the contents, the defendant stated that the pen had been out of order a couple of weeks, and perhaps there were a couple of pieces of the broken pen inside. The defendant persisted in his concealment and false statements. Shortly after some diamonds were found in the barrel of the broken pen. The defendant then asked, if he made a clean breast of it, if immunity would be granted to him, to which the officer stated that he had no authority so to do. Upon further questioning, the defendant produced the other fountain pen, which contained four diamonds, and a box of tooth paste, from which he took a tube, squeezed it, and two more diamonds were in its contents. This court affirmed the conviction, and held that the smuggling had been so fully executed that all there was left for the defendant to do was to escape detection. For the reason there stated, the case is to be distinguished from the one at bar, which is well within the holding of the Keck Case.

In United States v. One Trunk, 184 F. 317, 106 C. C. A. 459, in considering the time of making entry, this court said: "We reached the conclusion that 'if at any time while the entry is being made, and before it is completed, there is a disclosure by the passenger, which is sufficient to put the customs officers upon inquiry as to the dutiable character of any of the contents of the packages, we think that within the meaning of the statute it is to be deemed that the articles were mentioned to the collector before whom such entry was made.' "

Upon the evidence in this record, it was error to instruct the jury in the language quoted, to which exception was taken. It was erroneous to adopt section 593 of the Tariff Act of 1922 as the basis of the indictment on the evidence in this case. Whatever may be the responsibility of the plaintiff in error under other sections of the Tariff Act specifically designed to cover attempts at fraud in connection with passengers' baggage is not before us.

Judgment of conviction reversed.

Judge ROGERS concurred in these views, but, owing to his absence, has not read this opinion.